**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JANISA JOSEFINA LANZARO-BRUNSTEIN,     :7:25-cv-05905-NSR
                                          :

          Plaintiff,                  :
                                          :

          -against-            :
                                        :

THE CREATIVE PORTAL LLC, WRITERS    :
PORTAL LLC, WOODSIDE MOTION COMPANY  :
LLC, and JACK ANDREWS,           :
                                        :

          Defendants.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

 

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**THE CREATIVE PORTAL LLC AND WOODSIDE MOTION CO. LLC'S**
**MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**

 

Loanzon LLP
1345 6th Avenue, Fl. 2
New York, New York 10105
(212) 760-1515
tristan@loanzon.com
*Attorneys for Defendants The Creative Portal LLC*
*and Woodside Motion Co. LLC*

**TABLE OF CONTENTS**

FACTS ................................................................................................................2

A. Procedural History ......................................................................................2

B. Factual Allegations in the Third Amended Complaint ...............................3

C. Evidence from Plaintiff's Other Court Filings ..........................................5

D. Facts from the accompanying Ruiz and Ferolino Declarations ................5

    1. Corporate Identities and Geographic Location ................................5

    2. No Relationship with Jack Andrews or Writers Portal LLC .....................6

    3. No Connection to Florida Creative Portal Entity.............................6

    4. Defendants Explicitly Refused to Participate in the Amazon Scheme ..........7

    5. Creative Portal Provided Legitimate Services to Plaintiff.............................8

    6. Woodside Motion Provided Legitimate Services to Plaintiff.......................8

    7. Payment Processing Arrangement .................................................8

    8. Plaintiff's Own Acknowledgment That Defendants Were Not the Scammers ................................................................................................9

LEGAL STANDARD ........................................................................................9

A. Rule 12(b)(6) and Pro Se Pleading Standard ............................................9

B. Rule 12(b)(1) Standard.............................................................................10

ARGUMENT.....................................................................................................10

A. PLAINTIFF'S RICO CLAIMS FAIL AS A MATTER OF LAW ........10

    1. No Viable RICO Enterprise Exists Because Defendants Acted Independently Without Coordination ...............................................11

        a. Plaintiff Fails to Allege the Purpose, Relationships, and Longevity Required Under Boyle .......................................................11

        b. Creative Portal and Woodside Motion Have No Connection to Jack Andrews or Writers Portal LLC.............................................12

        c. Plaintiff's "Conclusory Naming of a String of Entities" Is Insufficient .............................................................................14

        d. The Complaint Fails to Allege an Enterprise Separate from the Racketeering Activity ..........................................................15

    2. Plaintiff Fails to Allege a Pattern of Racketeering Activity: No Closed-Ended Continuity ...........................................................16

a. No Closed-Ended Continuity: The 16-Month Period Is Insufficient Under Second Circuit Precedent..........................................................16

b. No Open-Ended Continuity: The Inherently Terminable Business Relationship Poses No Threat of Future Criminal Activity.................17

3. Plaintiff's Fraud-Based Predicates Fail Rule 9(b)'s Heightened Pleading Standard .............................................................................................18

4. Defendants Provided Legitimate Services, Not Criminal Conduct ............20

B. THE COURT LACKS SUBJECT MATTER JURISDICTION ............................21

1. Complete Diversity Is Lacking Because Plaintiff and Creative Portal Are Both New York Citizens.................................................................21

2. The Amount in Controversy Attributable to Creative Portal and Woodside Motion Does Not Meet the Jurisdictional Threshold.......................................22

**CONCLUSION** ...............................................................................................23

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................... 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................... 9

*Benhayun v. Halsted Fin. Servs., LLC,*
    No. 21-CV-4421, 2022 WL 4813538 (E.D.N.Y. Sept. 30, 2022) .............................. 10

*Boyle v. United States,*
    556 U.S. 938 (2009) ......................................................................... 11, 12, 13, 14, 15

*Cedric Kushner Promotions, Ltd. v. King,*
    533 U.S. 158 (2001) ................................................................................... 12

*Colony at Holbrook, Inc. v. Strata G.C., Inc.,*
    928 F. Supp. 1224 (E.D.N.Y. 1996) ....................................................................... 19

*D'Addario v. D'Addario,*
    901 F.3d 80 (2d Cir. 2018) ........................................................................ 11, 12, 16

*Doumbia v. Bamba,*
    No. 24-CV-1088, 2024 WL 4108540 (S.D.N.Y. Aug. 26, 2024) ............................... 22

*Erickson v. Pardus,*
    551 U.S. 89 (2007) ................................................................................... 10

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004) ...................................................................... 12, 14, 15

*GICC Cap. Corp. v. Tech. Fin. Grp., Inc.,*
    67 F.3d 463 (2d Cir. 1995) ........................................................................... 18

*Gunn v. Minton,*
    568 U.S. 251 (2013) ................................................................................... 10

*H.J. Inc. v. Northwestern Bell Tel. Co.,*
    492 U.S. 229 (1989) ................................................................................... 16

*Handelsman v. Bedford Vill. Assoc. LP,*
    213 F.3d 48 (2d Cir. 2000) ........................................................................... 22

*Holmes v. Parade Place, LLC,*
    No. 12-CV-6299, 2013 WL 5405541 (S.D.N.Y. Sept. 26, 2013) ......................... 11, 17

*Hubbach v. Capital One, N.A.,*
    No. 25-CV-406, 2025 WL 1983218 (S.D.N.Y. Jun. 11, 2025) ................................. 10

*Hubbach v. Helbraun and Levey,*
    No. 25-CV-0717, 2025 WL 1994562 (E.D.N.Y. Jul. 17, 2025) ..................... 17, 18, 19

*Jones-Bey v. La Casse,*
    No. 20-CV-9171, 2020 WL 7343292 (S.D.N.Y. Dec. 10, 2020) ............................... 22

*Katzman v. Victoria's Secret Catalogue,*
    167 F.R.D. 649 (S.D.N.Y. 1996) ................................................................... 10

iii

*Lundy v. Catholic Health Sys. of Long Island Inc.,*
    711 F.3d 106 (2d Cir. 2013)..........................................................11

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000)..........................................................10

*One World, LLC v. Onoufriadis,*
    No. 21-CV-374, 2021 WL 4452070 (2d Cir. Sept. 29, 2021) .....................18

*Rodriguez v. Rodriguez,*
    No. 10-CV-891, 2013 WL 4779639 (S.D.N.Y. July 8, 2013) ......................4

*Spool v. World Child Int'l Adoption Agency,*
    520 F.3d 178 (2d Cir. 2008).............................................16, 17, 19

*Sullivan v. IStoreGreen, LLC,*
    No. 14-CV-7163 (ENV) (RLM), 2015 WL 152902 (E.D.N.Y. Jan. 12, 2015)...........10

*Swofford v. Mandrell,*
    969 F.2d 547 (7th Cir. 1992) ........................................................4

## Statutes

18 U.S.C. § 1961(1) ....................................................................20

18 U.S.C. § 1961(4) ....................................................................11

18 U.S.C. § 1962(c) ..................................................................4, 11

18 U.S.C. § 1962(d) ....................................................................4

28 U.S.C. § 1332 ......................................................................21

## Rules

Fed. R. Civ. P. 9(b) ................................................................18, 19

Fed. R. Civ. P. 12(b)(1)............................................................2, 10, 24

Fed. R. Civ. P. 12(b)(6).............................................................2, 9, 24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

JANISA JOSEFINA LANZARO-BRUNSTEIN,    :7:25-cv-05905-NSR
:
          Plaintiff,       :
:
        -against-     :
:
THE CREATIVE PORTAL LLC, WRITERS    :
PORTAL LLC, WOODSIDE MOTION COMPANY  :
LLC, and JACK ANDREWS,     :
:
        Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Defendants The Creative Portal LLC ("Creative Portal") and Woodside Motion Co. LLC ("Woodside Motion"), by their undersigned counsel, submit this memorandum of law in support of their motion to dismiss. Defendants are legitimate New York businesses that provided social media management, website development, and video production services to plaintiff. They never made representations about Amazon Studios, never instructed plaintiff to pay third parties, and explicitly refused to participate in any Amazon-related activities when plaintiff requested their involvement.

Importantly, before filing this lawsuit, plaintiff herself acknowledged in writing that these defendants were not the scammers. On June 24, 2025, plaintiff emailed defendants stating: "I would like to bring to your attention that I was scammed by someone impersonating an Amazon Content Manager named Jack Andrews." (See accompanying Declaration of Francis Ferolino ¶ 8, Ex. D.) ("Ferolino Decl.") Plaintiff distinguished between the fraud perpetrated by someone *impersonating* Amazon and the legitimate services Creative Portal and Woodside Motion provided. Yet plaintiff now attempts to lump these separate defendants together in a RICO

1

conspiracy despite her own contemporaneous acknowledgment that they were not involved in the scam.

The undisputed evidence establishes that Creative Portal and Woodside Motion have no relationship with Jack Andrews or Writers Portal LLC, never communicated or coordinated with them, and first learned of plaintiff's Amazon fraud allegations from plaintiff's own June 24, 2025 email. (*See* accompanying Gabriel Ruiz Declaration Decl. ¶¶ 14-19, 57-60 ("Ruiz Decl."); Ferolino Decl. ¶¶ 8-10.) When plaintiff asked Creative Portal on January 24, 2025, to contact "Jack from Amazon," Creative Portal explicitly declined. (Ferolino Decl. ¶ 6, Ex. C; Ruiz Decl. ¶¶ 31-35.)

Plaintiff's RICO claims fail because she cannot establish: (1) an enterprise – defendants acted independently without coordination; (2) a pattern – the alleged conduct spans less than two years, involves a single victim, and consists of discrete transactions; or (3) predicate acts – defendants provided legitimate services, not criminal conduct, and plaintiff fails Rule 9(b)'s particularity requirement. Moreover, four days after Judge Karas questioned the basis for federal jurisdiction (ECF No. 7), plaintiff added RICO claims, but without viable RICO claims, this Court lacks subject matter jurisdiction.

Creative Portal and Woodside Motion respectfully request the Court to dismiss all claims against them, pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and 12(b)(1) for lack of subject matter jurisdiction.

**FACTS**

**A. Procedural History**

On July 16, 2025, plaintiff Janisa Josefina Lanzaro-Brunstein, proceeding pro se, filed a Complaint against The Creative Portal LLC, Writers Portal LLC, and Jack Andrews, asserting

claims sounding in breach of contract, fraud, and N.Y. Gen. Bus. Law § 349. (ECF No. 1.) Plaintiff subsequently filed multiple amended complaints. (ECF Nos. 4, 5, 16.)

On August 22, 2025, Judge Kenneth M. Karas issued an Order to Show Cause directing plaintiff to show cause by September 5, 2025: (1) "why her federal criminal claims should not be dismissed," noting that "[p]laintiff invokes federal criminal statutes, however, a private citizen cannot prosecute a criminal action in federal court"; and (2) "why diversity jurisdiction is appropriate here. Otherwise, the Court will dismiss the case for want of subject matter jurisdiction." (ECF No. 7 at 1-2.)

Four days later, on August 26, 2025, plaintiff filed her "Civil Complaint for Racketeer Influenced and Corrupt Organizations Act (RICO)," asserting RICO and RICO conspiracy claims. (ECF No. 16.) This Third Amended Complaint ("TAC") is the operative pleading. (ECF No. 101 at 1.)

Between August and November 2025, plaintiff filed five separate motions for preliminary injunctive relief, all of which were denied by the Court. (ECF Nos. 19, 33, 40, 47, 55.) The Court specifically found that plaintiff "failed to demonstrate irreparable harm or likelihood of success on the merits." (ECF No. 101 at 1-2.)

The case has been reassigned multiple times, initially to Judge Laura Taylor Swain, then to Judge Kenneth M. Karas, and currently to Judge Nelson S. Roman. On November 13, 2025, Judge Roman granted defendants Creative Portal and Woodside Motion leave to file this motion to dismiss. (ECF No. 101.)

**B. Factual Allegations in the Third Amended Complaint**

Plaintiff alleges that beginning in 2023, defendant Jack Andrews, allegedly acting in connection with various entities, falsely represented that Amazon Studios intended to purchase

the rights to plaintiff's books for a series adaptation. [1] (ECF No. 1 at ¶¶ 6-7; ECF No. 5 at ¶¶ 1-2.) Plaintiff claims Andrews instructed her to make various payments to Writers Portal LLC, including:

- A $10,000 wire transfer to a Chase Bank account for Writers Portal LLC (Account #562651367, Routing #122100024), purportedly for a "prestigious legal team at 'Marshall & Associates Law Firm' allegedly retained by Amazon Studios," which plaintiff "later discovered" was "fictitious." (ECF No. 1 at ¶ 9.)

- A $25,000 money order to Writers Portal LLC as a "retainer to show faith for signing a contract with Amazon" for plaintiff's first book. (ECF No. 1 at ¶ 10.)

- A $15,000 money order to Writers Portal LLC relating to a second book. (ECF No. 1 at ¶ 10.)

Plaintiff alleges that "Jack Andrews also instructed Plaintiff to contact Creative Portal LLC for the production of cinematic trailers, screenplays, photos, and videos, stating that Creative Portal LLC knew the standards and requirements necessary for Amazon executives to purchase the rights to Plaintiff's books." (ECF No. 1 at ¶ 8.)

Plaintiff claims she paid "over $150,000" in total, later itemized as $103,500 in some filings. (ECF No. 1 at ¶ 11.)

The TAC adds Woodside Motion Co. LLC as a defendant and asserts claims under 18 U.S.C. §§ 1962(c) and (d) for civil RICO and RICO conspiracy. (ECF No. 16.) The TAC alleges that defendants "share overlapping ownership, addresses, and lines of commerce, and have used

---

[1] Under *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at 1 (S.D.N.Y. July 8, 2013), and *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992), this Court may "consider factual allegations contained in a pro se litigant's opposition papers and other court filings." As plaintiff's allegations are not consistent throughout her prolific filings, defendants cite to the plaintiff's two previous complaints for relevant allegations.

interstate communications and electronic channels to engage in the alleged fraudulent scheme." (ECF No. 93 at 1.)

**C. Evidence from Plaintiff's Other Court Filings**

Plaintiff's own filings demonstrate confusion between multiple entities. The original Complaint sued "The Creative Portal LLC" and listed its address as "1177 Avenue of the Americas, 5th Floor, NY, NY 10036." (ECF No. 1 at ¶ 2.) The Proposed Amended Complaint (ECF No. 65) identifies two separate Creative Portal entities:

(a)    "Defendant The Creative Portal, LLC is a Florida Limited Liability Company with principal offices at 627 Eldron Dr, Suite 101, Miami Springs, FL 33166." (ECF No. 65 at ¶ 5.)

(b)    "Defendant The Creative Portal LLC is a New York Limited Liability Company with registered offices at 418 Broadway, Suite N, Albany, NY 12207." (ECF No. 65 at ¶ 6.)

**D. Facts from the accompanying Ruiz and Ferolino Declarations**

Gabriel Ruiz, owner and principal of both Creative Portal and Woodside Motion, and Francis Ferolino, Creative Portal's authorized independent contractor who was the primary point of contact with plaintiff, provide the following undisputed facts:

*1. Corporate Identities and Geographic Location*

Creative Portal is a New York domestic limited liability company organized on March 31, 2023, with a registered address at 418 Broadway, Suite N, Albany, NY 12207. (Ruiz Decl. ¶¶ 7-8.) Woodside Motion is a New York domestic limited liability company organized on March 21, 2025. (*Id.* at ¶ 10.) Gabriel Ruiz resides in Cebu City, Philippines. (*Id.* at ¶ 4.) Francis Ferolino also resides in Cebu City, Philippines. (Ferolino Decl. ¶ 1.)

The entities are separate legal persons with distinct purposes: Creative Portal provides advertising and social media services; Woodside Motion provides video production services. (Ruiz Decl. ¶¶ 9, 11-12.) "Both Creative Portal and Woodside Motion are separate legal entities from each other, each with its own separate legal existence, tax identification numbers, bank accounts, and business operations." (*Id.* at ¶ 12.)

### 2. No Relationship with Jack Andrews or Writers Portal LLC

Gabriel Ruiz does not know Jack Andrews and has no relationship with him. (Ruiz Decl. ¶¶ 14-15.) Neither Creative Portal nor Woodside Motion has any connection to Jack Andrews. (*Id.* at ¶ 16.) Gabriel Ruiz does not know any entity called "Writers Portal LLC" or "Writer's Portal LLC." (*Id.* at ¶ 17.) Neither Creative Portal nor Woodside Motion has any connection to Writers Portal LLC. (*Id.* at ¶ 18.) "Neither I nor my companies have ever had any communications with Jack Andrews or Writers Portal LLC regarding plaintiff or any other matter." (*Id.* at ¶ 19.)

Francis Ferolino confirms: "Neither Gabriel Ruiz, Creative Portal, nor Woodside Motion Co. LLC has ever worked with Amazon Studios, 'Jack Andrews,' 'Jack from Amazon,' or any person claiming to represent Amazon." (Ferolino Decl. ¶ 9.) "Neither Gabriel Ruiz, Creative Portal, nor Woodside Motion Co. LLC has any knowledge of, involvement in, or connection to the alleged fraudulent scheme described in the plaintiff's complaint." (Ferolino Decl. ¶ 10.)

### 3. No Connection to Florida Creative Portal Entity

Gabriel Ruiz became aware through this litigation that there exists a separate Florida entity "THE CREATIVE PORTAL, LLC" (File # L19000185277) located at 627 Eldron Dr., Miami Springs, FL. (Ruiz Decl. ¶ 21.) "Neither I, Creative Portal, nor Woodside Motion has any relationship, affiliation, ownership interest, or connection of any kind with the Florida entity

'THE CREATIVE PORTAL, LLC.'" (*Id.* at ¶ 22.) "The New York entity 'The Creative Portal LLC' that I own and operate is a completely separate and distinct legal entity from the Florida 'THE CREATIVE PORTAL, LLC.'" (*Id.* at ¶ 23.)

Ruiz added: "I have never been to Miami Springs, Florida. Neither Creative Portal nor Woodside Motion has ever operated from, maintained offices at, or had any connection to that Florida address." (*Id.* at ¶ 24.) "I do not know Natalie Portal or Nataly Perez Portal and have no connection to her or any business she may operate." (*Id.* at ¶ 25.)[2]

*4. Defendants Explicitly Refused to Participate in the Amazon Scheme*

The timeline of plaintiff's Amazon-related contacts with Creative Portal is critical:

(a)    On December 30, 2024, plaintiff contacted Francis Ferolino stating that "Amazon would like to use her social media to promote her persona." (Ruiz Decl. ¶ 31; Ferolino Decl. ¶ 4, Ex. A.) Francis shared this email with Gabriel Ruiz. (Ruiz Decl. ¶ 31.)

(b)    On January 24, 2025, plaintiff again contacted Francis Ferolino, this time asking whether he had "a chance to connect with Jack from Amazon" and stating that "[h]e was scheduled to reach out to you about the clarification for the Travel Show Marketing." (Ruiz Decl. ¶ 32; Ferolino Decl. ¶ 5, Ex. B.)

(c)    On the same date, January 24, 2025, Francis Ferolino replied to plaintiff declining her request. He explained: "I am not in a position to speak with other representatives, including Jack from Amazon, on your behalf" and "As our client, we value your direct involvement to ensure that your vision and direction are fully reflected in the project." (Ferolino Decl. ¶ 6, Ex. C; Ruiz Decl. ¶ 33.)

---

[2] On October 21, 2025, an individual identifying herself as Natalie Portal sent two letters to the Court disclaiming any connection to this litigation and explicitly distinguishing the Florida entity from the defendants – The Creative Portal and Woodside Motion – in this case. (ECF Nos. 94, 95.)

### 5. Creative Portal Provided Legitimate Services to Plaintiff

Creative Portal provided social media management, website development, and cinematic trailer services to plaintiff and received a total payment of $47,000 over approximately 16 months (January 2024 through May 2025). (Ruiz Decl. ¶¶ 37-39.) "The services for which Creative Portal was paid were performed and delivered to plaintiff." (*Id.* at ¶ 40.) "At no time did Creative Portal represent to plaintiff that its services were required by, requested by, or in any way connected to Amazon Studios or any Amazon entity." (*Id.* at ¶ 41.)

### 6. Woodside Motion Provided Legitimate Services to Plaintiff

Woodside Motion entered into a written contract with plaintiff on March 24, 2025, and provided video production services in Thailand and New York, for which it received $3,000. (Ruiz Decl. ¶¶ 45-48.) "All services provided by Woodside Motion were legitimate video production services actually performed and delivered to plaintiff pursuant to the written agreement." (*Id.* at ¶ 49.) "At no time did Woodside Motion represent to plaintiff that its services were required by, requested by, or in any way connected to Amazon Studios or any Amazon entity." (*Id.* at ¶ 50.)

### 7. Payment Processing Arrangement

Woodside Motion's $3,000 payment from plaintiff was processed through Creative Portal's merchant account for plaintiff's convenience, as plaintiff wished to pay by credit card rather than by check. (Ruiz Decl. ¶¶ 52-53.) "This payment processing arrangement was: (a) Fully disclosed to plaintiff; (b) Arranged for plaintiff's convenience to allow her to use credit card payment; (c) Documented in our business records; and (d) not evidence of any unified enterprise or fraudulent activity." (*Id.* at ¶ 54.)

*8. Plaintiff's Own Acknowledgment That Defendants Were Not the Scammers*

On June 24, 2025 – before filing this lawsuit – plaintiff sent an email to Francis Ferolino stating: "I would like to bring to your attention that I was scammed by someone impersonating an Amazon Content Manager named Jack Andrews." (Ferolino Decl. ¶ 8, Ex. D; Ruiz Decl. ¶ 57.)

This email is a crucial party admission: plaintiff herself acknowledged that she had been "scammed by someone impersonating an Amazon Content Manager" – not by Creative Portal or Woodside Motion. Plaintiff distinguished between the legitimate services these defendants provided and the separate fraud scheme perpetrated by Jack Andrews. This was plaintiff's first communication to defendants about any Amazon fraud scheme. (Ruiz Decl. ¶ 57; Ferolino Decl. ¶ 8.) "Neither I, Creative Portal, nor Woodside Motion had any knowledge of, involvement in, or participation in any scheme to defraud plaintiff through false representations about Amazon Studios." (Ruiz Decl. ¶ 58.) "Neither I, Creative Portal, nor Woodside Motion had any knowledge that plaintiff was allegedly sending money to Writers Portal LLC or any other entity based on representations about Amazon Studios contracts." (*Id.* at ¶ 59.) "The services Creative Portal and Woodside Motion provided to plaintiff were completely independent of, and unrelated to, whatever dealings plaintiff may have had with Jack Andrews or Writers Portal LLC." (*Id.* at ¶ 60.)

## LEGAL STANDARD

### A.    Rule 12(b)(6) and Pro Se Pleading Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). With respect to pro se complaints, courts must construe them liberally and "hold them to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Typically, when a plaintiff proceeds without legal representation, the district court must regard that plaintiff's complaint in a more liberal light, affording the pleadings of a pro se litigant the strongest interpretation possible." *Sullivan v. IStoreGreen, LLC*, No. 14-CV-7163 (ENV) (RLM), 2015 WL 152902, at *1 (E.D.N.Y. Jan. 12, 2015) (citing *Erickson*, *id.*).

Even with this liberal construction, however, pro se complaints must meet minimum pleading standards. A pro se plaintiff's complaint must still "include enough facts to state a claim to relief that is plausible on its face" and cannot rely on "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678.

**B.    Rule 12(b)(1) Standard**

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). A plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If the court lacks subject matter jurisdiction, it may dismiss the action sua sponte." *Benhayun v. Halsted Fin. Servs., LLC*, No. 21-CV-4421, 2022 WL 4813538, at *1 (E.D.N.Y. Sept. 30, 2022).

**ARGUMENT**

**A.    PLAINTIFF'S RICO CLAIMS FAIL AS A MATTER OF LAW**

Civil RICO is "an unusually potent weapon – the litigation equivalent of a thermonuclear device." *Hubbach v. Capital One, N.A.,* No. 25-CV-406, 2025 WL 1983218, at *7 (S.D.N.Y. Jun. 11, 2025) (citing *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y.

10

1996). "Because the mere assertion of a RICO claim … has an almost inevitable stigmatizing effect on those named as defendants," and "the allure of treble damages, attorney's fees, and federal jurisdiction presents a powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO," courts have "an obligation to scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Holmes v. Parade Place, LLC*, No. 12-CV-6299, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013).

To state a civil RICO claim under § 1962(c), plaintiff must adequately plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013). Plaintiff fails to establish any of these essential elements.

## 1. No Viable RICO Enterprise Exists Because Defendants Acted Independently Without Coordination

### a. Plaintiff Fails to Allege the Purpose, Relationships, and Longevity Required Under Boyle

"The existence of an 'enterprise' – one existing 'separate and apart from the pattern of activity in which it engages' – is a necessary element of a section 1962(c) violation." *D'Addario v. D'Addario*, 901 F.3d 80, 99 (2d Cir. 2018). The RICO statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (cited in *D'Addario* at 100).

"[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009).

11

"Individuals who act 'independently and without coordination' may not be treated as part of a RICO association-in-fact." *D'Addario*, 901 F.3d at 101 (quoting *Boyle*, 556 U.S. at 947 n.4). "Proof that 'several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates, is not enough to show that the individuals were members of an enterprise.'" *Id.* Nor may a plaintiff prove an enterprise on the basis that "various [d]efendants and subgroups agreed at different times to engage in various fraudulent schemes." *Id.* at 101-02.

Moreover, "[t]he enterprise must be separate from the pattern of racketeering activity," *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004), "and distinct from the person conducting the affairs of the enterprise," *id.* (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161-62 (2001)). A complaint therefore must "detail [a] course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves." *First Cap., id.* at 175.

### b. Creative Portal and Woodside Motion Have No Connection to Jack Andrews or Writers Portal LLC

Plaintiff's TAC alleges that defendants "share overlapping ownership, addresses, and lines of commerce." (ECF No. 93 at 1.) But mere "overlapping" attributes do not establish the "purpose, relationships, and longevity" required under *Boyle*. Plaintiff's allegations fail all three *Boyle* requirements.

*First*, no common purpose exists. Creative Portal and Woodside Motion are independent New York businesses providing distinct services: advertising and social media management versus video production. (Ruiz Decl. ¶¶ 9, 11-12.) The entities are "separate legal entities from each other, each with its own separate legal existence, tax identification numbers, bank accounts, and business operations." (*Id.* at ¶ 12.) They operate legitimately in the ordinary course of

12

business providing "standard" services "that Creative Portal routinely provides to various clients." (*Id.* at ¶ 43.)

Importantly, Creative Portal and Woodside Motion have no connection whatsoever to the other alleged enterprise members – Jack Andrews and Writers Portal LLC. Gabriel Ruiz does not know Jack Andrews and has never had any communications with him. (*Id.* at ¶¶ 14-15, 19.) Neither Creative Portal nor Woodside Motion has any relationship with Jack Andrews or Writers Portal LLC. (*Id.* at ¶¶ 16, 18.)

This is precisely the situation *Boyle* prohibits: "several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates." *Boyle*, 556 U.S. at 947 n.4. If Jack Andrews defrauded plaintiff (which these defendants do not concede), he did so independently. Creative Portal and Woodside Motion provided unrelated, legitimate services under separate contracts with no knowledge of Andrews's alleged scheme. (Ruiz Decl. ¶¶ 58-60.)

*Second*, no relationships exist among the alleged associates. The TAC identifies four defendants: Creative Portal, Woodside Motion, Writers Portal LLC, and Jack Andrews. But plaintiff pleads no facts showing any relationship, communication, or coordination between Creative Portal/Woodside Motion and Andrews/Writers Portal.

The undisputed evidence establishes the opposite. When plaintiff specifically requested that Creative Portal contact "Jack from Amazon" on January 24, 2025, Francis Ferolino, acting with Gabriel Ruiz's authorization, explicitly refused, stating he was "not in a position to speak with other representatives, including Jack from Amazon, on your behalf." (Ferolino Decl. ¶ 6, Ex. C; Ruiz Decl. ¶¶ 33-34.) This refusal demonstrates not merely the absence of coordination but active rejection of any involvement with Jack Andrews or Amazon-related activities.

13

*Third*, no sufficient longevity exists to pursue a common enterprise purpose. Creative Portal's relationship with plaintiff "began in 2024 and primarily involved providing social media management and website services through early 2025." (Ruiz Decl. ¶ 62.) Woodside Motion's relationship "began with the contract signed in March 2025 and involved providing video production services in Thailand and New York in the spring of 2025." (*Id.* at ¶ 63.) "The business relationships were inherently limited in duration and scope to the specific services contracted for and delivered." (*Id.* at ¶ 66.)

This duration falls far short of the longevity required for an enterprise. Moreover, plaintiff's own allegations demonstrate that her contacts with Jack Andrews and Writers Portal preceded and were independent of her contracts with Woodside Motion. The "proposed amended complaint" alleges Andrews's representations about Amazon began "in 2023" (ECF No. 65 at ¶ 10) and that plaintiff sent money orders to Writers Portal in early 2024 for the alleged Amazon contracts (ECF No. 5 at ¶¶ 3-4.). These transactions were complete before plaintiff even contracted with Woodside Motion in March 2025.

Plaintiff has not alleged facts showing that Creative Portal and Woodside Motion had sufficient longevity of association with Andrews and Writers Portal to "permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946.

### c. Plaintiff's "Conclusory Naming of a String of Entities" Is Insufficient

Plaintiff's "conclusory naming of a string of entities does not adequately allege an enterprise." *First Cap.*, 385 F.3d at 175. The TAC alleges that defendants "share overlapping ownership, addresses, and lines of commerce" (ECF No. 93 at 1) but provides no factual support for these conclusory assertions.

14

The "overlapping ownership" allegation is false as to Jack Andrews and Writers Portal LLC – Creative Portal and Woodside Motion have no ownership connection to these entities. (Ruiz Decl. ¶¶ 14-19.) The "overlapping addresses" allegation appears based on plaintiff's confusion between the Florida "THE CREATIVE PORTAL, LLC" and the New York "The Creative Portal LLC" – two entirely separate entities. (*Id.* at ¶¶ 21-25.) Plaintiff's failed service attempts at the Florida address (ECF No. 76) and Natalie Portal's disclaimer letters (ECF Nos. 94, 95) confirm this confusion.

Gabriel Ruiz became aware through this litigation of the separate Florida entity but has no connection to it. (Ruiz Decl. ¶ 21.) "Neither I, Creative Portal, nor Woodside Motion has any relationship, affiliation, ownership interest, or connection of any kind with the Florida entity 'THE CREATIVE PORTAL, LLC.'" (*Id.* at ¶ 22.) "I have never been to Miami Springs, Florida. Neither Creative Portal nor Woodside Motion has ever operated from, maintained offices at, or had any connection to that Florida address." (*Id.* at ¶ 24.) Moreover, Natalie Portal, presumably the owner of the Florida-based The Creative Portal, LLC, stated that she never had "any dealings with any of the named co-defendants." (ECF No. 95)

Even the "overlapping lines of commerce" allegation is unsupported. Creative Portal provides social media and advertising services; Woodside Motion provides video production; Writers Portal allegedly solicited payments for purported legal services and Amazon contracts. These are not overlapping lines of commerce.

*d. The Complaint Fails to Allege an Enterprise Separate from the Racketeering Activity*

"The enterprise must be separate from the pattern of racketeering activity." *First Cap.*, 385 F.3d at 173. Plaintiff's complaint fails to "detail [a] course of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves." *Id.* at 175.

The TAC identifies the "predicate acts" as the very business transactions plaintiff had with defendants: payments for social media services, video production services, and payments to Writers Portal for purported Amazon-related services. Plaintiff has not alleged any separate organizational structure, ongoing operations, or course of conduct distinct from these individual transactions.

Even crediting its largely conclusory allegations, the TAC, at most, suggests that "various [d]efendants and subgroups agreed at different times to engage in various fraudulent schemes," which is insufficient to state a claim." *D'Addario*, 901 F.3d at 101-02. Plaintiff's complaint suggests, at most, that she entered into separate service contracts with different defendants at different times. This does not constitute a RICO enterprise.

## 2. Plaintiff Fails to Allege a Pattern of Racketeering Activity: No Closed-Ended Continuity

Even if plaintiff could establish an enterprise (she cannot), the TAC fails to allege a "pattern of racketeering activity." To demonstrate a pattern, plaintiff must show that predicate acts are both "related" and demonstrate "continuity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The continuity requirement can be satisfied by showing either "closed-ended" continuity (acts over a substantial period of time) or "open-ended" continuity (threat of continuing criminal activity). *Id.* at 241. Plaintiff's allegations satisfy neither.

### a. No Closed-Ended Continuity: The 16-Month Period Is Insufficient Under Second Circuit Precedent

"Since the Supreme Court decided *H.J. Inc.* in 1989, [the Second Circuit has] never held a period of less than two years to constitute a substantial period of time." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). "Although [the Second Circuit has] not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity." *Id.*

16

The alleged conduct attributable to Creative Portal and Woodside Motion spans approximately 16-18 months at most:

- Creative Portal's business relationship with plaintiff "began in 2024" and involved services "through early 2025." (Ruiz Decl. ¶ 62.) Creative Portal "received a total payment of $47,000 from plaintiff over approximately 16 months (January 2024 through May 2025)." (*Id.* at ¶ 39.)

- Woodside Motion's relationship "began with the contract signed in March 2025 and involved providing video production services in Thailand and New York in the spring of 2025." (*Id.* at ¶ 63.) Woodside Motion "received payment from plaintiff in the amount of $3,000 on or about March 20, 2025." (*Id.* at ¶ 47.)

The combined period spans less than two years – insufficient for closed-ended continuity under binding Second Circuit precedent.

The court in *Holmes v. Parade Place, LLC*, No. 12-CV-6299, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013) dismissed RICO claims where "alleged predicate acts also occurred within a 12-month period in 2006 and, thus, cannot reasonably be considered a 'substantial period of time' to show 'closed-ended' continuity." Similarly, in *Hubbach v. Helbraun and Levey*, No. 25-CV-0717, 2025 WL 1994562, *7 (E.D.N.Y. Jul. 17, 2025), the court found that allegations "span[ning] at most a series of months" is "not long enough to sustain 'closed-ended' continuity."

### b. No Open-Ended Continuity: The Inherently Terminable Business Relationship Poses No Threat of Future Criminal Activity

"An 'open-ended' pattern of racketeering activity … poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 183. "Where the enterprise primarily conducts a legitimate business, there must be some

evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *One World, LLC v. Onoufriadis*, No. 21-CV-374, 2021 WL 4452070, at *3 (2d Cir. Sept. 29, 2021) (summary order).

Plaintiff cannot establish open-ended continuity. The alleged conduct is "confined to the interactions between Defendants and Plaintiff," making it "inherently terminable." *See Hubbach, 2025 WL 1994562, at *8* (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)).

The business relationships between Creative Portal/Woodside Motion and plaintiff have ended. "Neither Creative Portal nor Woodside Motion has any ongoing business relationship with plaintiff and has no expectation of future business with her." (Ruiz Decl. ¶ 65.) "The business relationships were inherently limited in duration and scope to the specific services contracted for and delivered." (*Id.* at ¶ 66.)

As the court held in *Hubbach*, *id.* at 8, "there are no facts in Plaintiff's Complaint that would allow this Court to reasonably infer that 'Defendants' act of fraud constituted a regular way of conducting [their] affairs' generally, i.e. with clients other than Plaintiff." The same is true here.

### 3. Plaintiff's Fraud-Based Predicates Fail Rule 9(b)'s Heightened Pleading Standard

"Predicate acts sounding in fraud must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard of particularity." *Hubbach*, 2025 WL 1994562, at *6 (citing *Spool*, 520 F.3d at 185). Specifically, a RICO plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.*

18

"If there are multiple defendants involved, the plaintiff must 'connect the allegations of fraud to each individual defendant.'" *Hubbach*, *id.* (quoting *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1231 (E.D.N.Y. 1996)).

The TAC fails this standard as to Creative Portal and Woodside Motion. Plaintiff does not identify:

- Any specific false statement made by Creative Portal or Woodside Motion;

- Who at these companies allegedly made false statements;

- When or where such statements were made;

- Why the statements were false.

Instead, plaintiff makes general allegations lumping all defendants together. The original complaint states that "Jack Andrews also instructed Plaintiff to contact Creative Portal LLC for the production of cinematic trailers, screenplays, photos, and videos, stating that Creative Portal LLC knew the standards and requirements necessary for Amazon executives." (ECF No. 1 at ¶ 8.) But this allegation attributes the statement to Jack Andrews, not to Creative Portal.

Plaintiff identifies no statement by Creative Portal or Woodside Motion that was false. The undisputed evidence shows:

- Creative Portal provided social media management, website development, and cinematic trailer services as contracted. (Ruiz Decl. ¶¶ 37-43.)

- Woodside Motion provided video production services as contracted. (*Id.* at ¶¶ 45-50.)

- "At no time did Creative Portal represent to plaintiff that its services were required by, requested by, or in any way connected to Amazon Studios or any Amazon entity." (*Id.* at ¶ 41.)

- "At no time did Woodside Motion represent to plaintiff that its services were required by, requested by, or in any way connected to Amazon Studios or any Amazon entity." (*Id.* at ¶ 50.)

- Both entities delivered the services they promised. (*Id.* at ¶¶ 40, 49.)

Plaintiff cannot identify a scheme to defraud by Creative Portal or Woodside Motion because none existed. These defendants provided legitimate services, were paid for those services, and delivered what they promised. That plaintiff later decided she did not need these services does not transform them into predicate acts of fraud.

### 4. Defendants Provided Legitimate Services, Not Criminal Conduct

A fundamental deficiency in plaintiff's RICO claim is that the alleged "predicate acts" consist of legitimate business services that were actually provided. Creative Portal provided "social media content management and scheduling," "website development and management services," and "cinematic trailer production services." (Ruiz Decl. ¶ 38) Woodside Motion provided "pre-production planning," "on-location filming in Thailand for a travel and food vlog," "post-production services including editing, color correction, and final delivery of video content" and producing/coordinating a "documentary and B-roll shoot in New York City for a travelogue series featuring plaintiff." (*Id.* at ¶¶ 46(c), 48) These are standard professional services, not criminal activity.

RICO requires predicate acts that constitute criminal activity. 18 U.S.C. § 1961(1). Providing legitimate, contracted services – even if the client later regrets purchasing them – is not criminal conduct. Plaintiff's buyer's remorse does not transform ordinary business transactions into racketeering.

This case is starkly different from the Amazon scheme plaintiff alleges against Jack
Andrews. Plaintiff claims Andrews presented forged contracts, instructed payments to a fictitious
law firm, and never delivered any services. By contrast, Creative Portal and Woodside Motion:

- Are legitimately registered New York businesses (Ruiz Decl. ¶¶ 7, 10)

- Entered into written contracts with plaintiff (*Id.* at ¶¶ 37, 45)

- Actually provided the contracted services (*Id.* at ¶¶ 40, 49)

- Never made any representations about Amazon Studios (*Id.* at ¶¶ 41, 50)

- Explicitly refused to participate in any Amazon-related activities (*Id.* at ¶¶ 31-35;
Ferolino Decl. ¶¶ 4-7)

Indeed, plaintiff herself acknowledged the distinction. On June 24, 2025 – before filing this
lawsuit – plaintiff emailed Francis Ferolino stating: "I would like to bring to your attention that I
was scammed by someone impersonating an Amazon Content Manager named Jack Andrews."
(Ferolino Decl. ¶ 8, Ex. D; Ruiz Decl. ¶ 57.) Plaintiff knew she had been scammed by someone
*impersonating* Amazon – not by Creative Portal or Woodside Motion, which were providing
legitimate services.

## B.    THE COURT LACKS SUBJECT MATTER JURISDICTION

Without the RICO claims, this Court lacks subject matter jurisdiction over this action
because no diversity jurisdiction exists.

### 1. Complete Diversity Is Lacking Because Plaintiff and Creative Portal Are Both New York Citizens

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity of citizenship
between all plaintiffs and all defendants. "To establish diversity jurisdiction, the plaintiff must
allege (1) that the plaintiff and defendant(s) are citizens of different states and (2) that the

amount in controversy is or exceeds $75,000.00." *Jones-Bey v. La Casse*, No. 20-CV-9171, 2020 WL 7343292, at *4 (S.D.N.Y. Dec. 10, 2020).

Complete diversity is absent here because plaintiff resides at 25 Aldo Ct, Monroe, NY 10950. (ECF No. 1 at ¶ 1; ECF No. 65 at ¶ 4.) She is a citizen of New York.

Defendant The Creative Portal LLC is a New York domestic limited liability company organized on March 31, 2023, with a registered address at 418 Broadway, Suite N, Albany, NY 12207. (Ruiz Decl. ¶¶ 7-8.) For diversity purposes, an LLC is a citizen of every state of which its members are citizens. *Handelsman v. Bedford Vill. Assoc. LP,* 213 F.3d 48, 52 (2d Cir. 2000). Gabriel Ruiz is the owner and principal of Creative Portal. (Ruiz Decl. ¶ 5.) While Gabriel Ruiz resides in the Philippines (*Id.* at ¶ 4), Creative Portal is a New York entity organized under New York law. As a New York LLC, Creative Portal is a citizen of New York for diversity purposes, at minimum.

Because both plaintiff and defendant Creative Portal are citizens of New York, complete diversity does not exist. "Courts routinely dismiss claims for failure to demonstrate that diversity jurisdiction is appropriate." *Doumbia v. Bamba*, No. 24-CV-1088, 2024 WL 4108540, at *2 (S.D.N.Y. Aug. 26, 2024).

### 2. The Amount in Controversy Attributable to Creative Portal and Woodside Motion Does Not Meet the Jurisdictional Threshold

Even if diversity existed (it does not), the amount in controversy attributable specifically to Creative Portal and Woodside Motion is questionable.

Plaintiff's various filings claim different total damages amounts. The undisputed evidence shows:

- Creative Portal received "$47,000 from plaintiff over approximately 16 months (January 2024 through May 2025) for various video production, screenplay development, and digital marketing services." (Ruiz Decl. ¶ 39.)

- Woodside Motion received "$3,000 on or about March 20, 2025 for the video production services provided under the March 24, 2025 agreement." (*Id.* at ¶ 47.)

- The total attributable to these two defendants is $50,000.

The largest payments plaintiff alleges went to Writers Portal LLC ($50,000 in money orders and wire transfers). Additionally, plaintiff claims $15,000 in Thailand trip expenses – but this was plaintiff's own travel cost, not a payment to any defendant.

With the amount in controversy for Creative Portal and Woodside Motion totaling $50,000, these defendants do not meet the $75,000 threshold individually. While amounts may be aggregated if defendants acted in concert, plaintiff cannot establish concerted action given the undisputed evidence of no relationship, communication, or coordination between Creative Portal/Woodside Motion and the other defendants. (Ruiz Decl. ¶¶ 14-19, 58-60; Ferolino Decl. ¶¶ 9-10.)

## CONCLUSION

Plaintiff has conflated multiple distinct problems into a single federal lawsuit. She confuses a Florida entity with a New York entity. She lumps together defendants who never communicated or coordinated. She characterizes legitimate business services she purchased and received as "predicate acts" of racketeering. And she filed RICO claims four days after the Court questioned federal jurisdiction.

Plaintiff's RICO claims fail because she cannot establish: (1) an enterprise – defendants acted independently without coordination; (2) a pattern – the alleged conduct spans less than two

years, involves a single victim, and consists of discrete transactions that are inherently

terminable; or (3) predicate acts – defendants provided legitimate services, not criminal conduct,

and plaintiff fails Rule 9(b)'s particularity requirement.

Without viable RICO claims, this Court lacks subject matter jurisdiction. Complete

diversity is absent because both plaintiff and Creative Portal are New York citizens. (Ruiz Decl.

¶¶ 4, 7-8.) The amount in controversy attributable to these defendants ($50,000 total) does not

meet the statutory threshold. And plaintiff's state law claims do not provide an independent basis

for federal jurisdiction.

For the above reasons, The Creative Portal LLC and Woodside Motion Co. LLC

respectfully request that this Court dismiss all claims against them pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief can be granted; in the alternative, dismiss

for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); and grant such other

and further relief as the Court deems just and proper.

Dated:  New York, New York
        December 29, 2025

Respectfully submitted,

By: *Tristan C. Loanzon*
Tristan C. Loanzon
Loanzon LLP
1345 6th Avenue, Fl. 2
New York, New York 10105
(212) 760-1515
tristan@loanzon.com
*Attorneys for Defendants The Creative Portal LLC
and Woodside Motion Co. LLC*